## CLYMORE PRODUCTION CO. et al. v. THOMPSON et al.

### No. 517.

District Court, W. D. Texas.
July 22, 1935.

Allen K. Swann, of Tulsa, Okl., and B. D. Tarlton and Boone, Henderson, Boone & Davis, all of Corpus Christi, Tex., for complainants.

William McCraw, Atty. Gen., and Archie D. Gray, Asst. Atty. Gen., for respondents.

Lawler, Wood & Childress and Ralph Wood, all of Houston, Tex., for intervener Texon Royalty Co.

Vinson, Elkins, Sweeton & Weems and Thomas Fletcher, all of Houston, Tex., for intervener United Production Corporation.

Before FOSTER, Circuit Judge, and KENNERLY and McMILLAN, District Judges.

McMILLAN, District Judge.

Complainants, two Delaware corporations, by bill in equity sue the various members of the Railroad Commission of Texas, the Governor, the Attorney General, and the chief supervisor of the oil and gas department of the commission, seeking to restrain the enforcement of certain orders of the Railroad Commission with regard to eight gas or oil wells in the Agua Dulce field in Nueces county, Tex.

Complainants either own or are interested in the wells, though at the time of the filing of the suit and upon the hearing the property was in the hands of a

state receiver. It is charged generally that the orders of the commission, ostensibly made in pursuance of the state laws, are outside the powers conferred by the law, are arbitrary, capricious, and void and constitute a taking of complainant's property without due process. It is further charged that the orders are void for discrimination, and, in the alternative, complainants allege that if the orders fall within the purview of the statutes, then the laws are obnoxious to the Fourteenth Amendment. The necessary amount in controversy is alleged and jurisdiction appears on the face of the bill both on the ground of diversity of citizenship and federal question. No question with regard to jurisdiction, either federal or equitable, has been presented, and, accordingly, it appears and we find that the court has jurisdiction to entertain and dispose of the case.

A temporary restraining order was denied by the District Judge and a preliminary injunction being pressed for and the validity of the state statutes and commission's orders being assailed under the Constitution, a three-judge court has been duly organized.

On the hearing of the application for preliminary injunction the state receiver, acting under the orders of this court, applied for leave to intervene for the purpose of espousing the cause of action asserted by complainants, and it appearing that he is a proper, and in fact probably necessary party to the litigation, his application will be granted.

At the same time applications for leave to intervene were filed by the Texon Royalty Company and United Production Corporation. These parties allege substantially that they are adjacent leaseholders or property owners and are taking gas from a common pool with complainants and their receivers; that complainants in the past have withdrawn many millions of cubic feet of said gas and after stripping it of gasoline permitted it to escape in the air; that they will continue this practice unless restrained by the orders of the commission now under attack. They further allege that these withdrawals are depleting the pool and will eventually drain it, to their great injury. They pray to be allowed to come into the case for the purpose of establishing their interest, and these facts, and combatting the efforts of the complainants to continue the alleged wasteful practice.

They ask leave to intervene in subordination to and in ' recognition of the propriety of the main proceeding in accordance with Equity Rule 37 (28 USCA following section 723). While in some cases the right to intervene is absolute, usually it lies within the discretion of the court. If the facts asserted by interveners are true, they are apparently deeply interested in the result of the litigation. Apparently it has been the policy of the state to permit parties similarly situated to participate in litigation of this kind. Without now attempting to pass upon their absolute right to intervene or the asserted doctrine of correlative rights claimed to be granted by the new statutes, the court is of the opinion that their intervention is proper and it will be allowed.

The wells involved here have in the past produced, and with one exception are at the present apparently capable of producing large quantities of gas. Complainants have in the past erected at the well heads a device which they term a separator and into which they turn this gas through a tubing, the wells having been theretofore choked down to a fraction of their capacity. In these separators there is recovered according to complainant's allegations and proof approximately sixty-five barrels per day of water-white liquid from each well. Thereafter the gas is transported by pipes to the gasoline plant where gasoline is extracted therefrom and the remaining gas is popped off in the air. Many millions of cubic feet of gas capable of being used for heat, light, and power have been so dissipated, since this practice has been followed.

It is the contention of complainants that this water-white liquid so caught in the separators is crude petroleum oil, while respondents vigorously assert on the other hand that it is merely drip gasoline or condensate brought about by a process of cooling and expansion in the separators. The case was presented on the application for preliminary injunction on affidavits, some twenty or twenty-five being offered by each side, supplemented by certain documentary evidence and exhibits.

The first order of the commission which is attacked was made on March 9, 1934. It substantially forbade the blowing into the

air the residuary or tail gas from complainant's wells and required the use of same for fuel or light, or its return under adequate pressure to the horizon from which it came. This order was on July 14, 1934, temporarily abrogated, but it was again promulgated after due hearing on March 6, 1935. Thereafter on May 21st and after the passage and effective date of House Bill 266 (Laws Tex. 1935, c. 120 [Vernon's Ann. Civ. St. Tex. Art. 6008]), the matter was again considered by the commission on application of the state receiver, he contending that under that act and House Bill 782 (Laws Tex. 1935, c. 76, § 2 [Vernon's Ann. Civ. St. Tex. Art. 6014]), relating to oil wells, the commission's prior order should be modified or set aside. The commission denied this application and continued the orders of March 9th and March 6th in force.

Complainants contend that they have no market for the residuary gas for fuel or light and that the cost of returning same to the horizon from which it came is prohibitive, and that accordingly the effect of the commission's order is to preclude all possibility of production from the wells.

 Despite the recognized property rights, coupled with the capture doctrine, which prevail in Texas with regard to oil and gas, the courts, both state and federal, are thoroughly committed to the proposition that the state for the purpose of conserving its natural resources and preventing waste has the right to regulate production. For that purpose and within reasonable bounds and charted rules the Legislature may delegate to the Railroad Commission the authority to enforce the laws and to make rules and regulations pursuant thereto. Henderson, Inc., v. Railroad Commission (D. C.) 56 F.(2d) 218; People's Petroleum Producers, Inc., v. Sterling et al. (D. C.) 60 F.(2d) 1041; Danciger Oil & Refining Co. of Texas v. Smith et al. (D. C.) 4 F. Supp. 236; Canadian River Gas Co. v. Terrell et al. (D. C.) 4 F. Supp. 222; Amazon Petroleum Corporation v. Railroad Commission of Texas (D. C.) 5 F. Supp. 633; Brown v. Humble Oil & Refining Company (Tex. Sup.) 83 S.W. (2d) 935.

Statutes reasonably calculated to effect this purpose and orders of the commission falling within the purview of such statutes have been uniformly upheld. Amazon Corporation v. Railroad Commission, supra. In the Henderson Case, supra, an order of the commission based on such a statute forbidding the popping off of gas into the air after the stripping of same for its gasoline content was sustained as valid.

To these general principles (at least on the application for preliminary injunction) complainants take no exception. The matter which is presented to us here resolves itself into one of fact. House Bill 266 substantially constitutes a complete revision and amendment of article 6008, Rev. St. Tex. 1925, relating to gas conservation. House Bill 782 does the same for article 6014, relating to oil operations. It is unnecessary to set out the various provisions of these two acts. It was conceded upon this hearing and is again conceded in the briefs filed by the parties that if complainant's wells are gas wells as contemplated by the provisions of House Bill 266, the order of the commission is valid, and unless avoided by the alleged discrimination, effectually prevents the operation of these wells along the line of complainant's desires. On the other hand, if the complainant's wells are oil wells, they fall under the provisions of House Bill 782 and complainants are entitled, in connection with the production of crude petroleum oil from said wells, to make the desired use of their gas, and the order of the commission is unsupported by the law, and accordingly null and void.

Affidavits pro and con with regard to this contested issue were submitted at great length by both parties. Affiants, asserted to be oil and gas experts, practical oil and gas operators, oil and gas drillers, petroleum geologists, chemists, and even salesmen, have deposed with great volubility and contrariety. As is frequently the case when experts appear upon the legal battlefield, each party has fortified its position by affidavits diametrically opposed, and absolutely incapable of judicial reconciliation. Despite the fact that the liquid caught and saved in the separator is water white and so volatile as to be capable of immediate use in motor vehicles, complainants contend and offer affidavits to show that it is crude petroleum oil and contains the various hydrocarbon compounds characteristic thereof. The affidavits of the respondents deny this conclusion and assert, on the other hand, that this water-white liquid is nothing more than gasoline, or as some say drip gaso-

line or condensate. Many affiants for complainants assert the general proposition that the wells are oil wells, while an equal number for respondents unqualifiedly assert that they are gas wells and produce no liquid of a character commonly known as crude petroleum oil by the industry.

In view of the fact that the case has been submitted upon affidavits and the witnesses have not been subject to cross-examination and a trial on the merits will possibly be had, it is probably not proper at this time for the court to attempt any ultimate findings upon this controverted issue. Upon this application for preliminary injunction, the facts being highly controversial, the matter must turn upon the following principles of law:

 Assuming the statute to be valid, the court will not, after an administrative body acting under that statute has, after hearing, made a finding upon which the order attacked is predicated, substitute its judgment or opinion for that of the administrative body unless the facts clearly and unequivocally show their findings to be wrong. The question confronting us is one of claimed confiscation by arbitrary and unreasonable orders asserted to have been made without the pale of the law. The duty to make fact findings having been confided to the commission, we are only authorized to determine whether the evidence is such that we must say that reasonable men charged with that duty would not have reached the conclusion which the commission reached. Viewing the matter from that standpoint, we are unable to say that the evidence clearly shows that the commission was in error in classifying these wells as gas wells and regulating them as such. Danciger Oil & Refining Company of Texas v. Smith, supra; Amazon Petroleum Corporation v. Railroad Commission, supra; Shupee v. Railroad Commission, 123 Tex. 521, 73 S. W.(2d) 505; Peoples ex rel. New York & Queens Gas Company v. McCall, 219 N. Y. 84, 113 N. E. 795, Ann. Cas. 1916E, 1042.

The only other matter remaining is that of the claimed discrimination. With regard to that, it is sufficient to say that the evidence produced upon the hearing was insufficient to support complainant's assertion with regard thereto.

It accordingly follows that the preliminary injunction prayed for will be denied, and appropriate orders, both with regard to the interventions and the preliminary injunction in conformity with this opinion, may be prepared by counsel and submitted to the court for entry.