**CLYMORE PRODUCTION CO. et al. v. THOMPSON et al.**

No. 517.

District Court, W. D. Texas, Austin Division.
Jan. 28, 1936.

A. K. Swann, of Tulsa, Okl., and B. D. Tarlton and Boone, Henderson, Boone & Davis, all of Corpus Christi, Tex., for complainants.

Wm. McCraw, Atty. Gen. of Texas, for respondents.

Lawler, Wood & Childress, of Houston, Tex., for intervener Texon Royalty Co.

Charles I. Francis and Vinson, Elkins, Sweeton & Weems, all of Houston, Tex., for United Production Corporation.

Before HUTCHESON, Circuit Judge, and KENNERLY and McMILLAN, District Judges.

McMILLAN, District Judge.

When this case was before the court on application for preliminary injunction, an opinion was handed down on which an order was subsequently entered denying the interlocutory relief prayed for. Clymore Production Co. et al. v. Thompson et al. (D.C.) 11 F.Supp. 791. The case is now before the court again on final hearing.

A full statement of the nature of the case was made in the opinion filed on the application for preliminary injunction and it is unnecessary to go over that ground again. While the evidence adduced by affidavits at the first hearing has been greatly extended and amplified by the oral evidence and exhibits presented on the final hearing, the record

is still in very much the same shape at this time as it was when the preliminary injunction was denied. In denying the interlocutory relief asked for, the court based its action upon the proposition that the evidence failed to show that the Commission was in error in classifying the complainant's wells as gas wells and regulating them as such; that the duty to regulate oil and gas wells having been confided by statute (Vernon's Ann.Civ.St. Tex. arts. 6008, 6014) to the Commission, the court would not disturb its action in the premises unless clearly shown to be wrong.

Complainants challenge this proposition and assert on the other hand that the statutes having defined what constitutes oil and gas wells, their provisions are self-executing and the findings of the Commission with regard thereto are entitled to no weight. We think it is undoubtedly true that the statutes having defined what constitutes an oil or gas well, the Commission is without authority to change or alter those definitions. However, we think it equally true that as an incident to various duties imposed upon, and powers delegated to, the Commission with regard to the regulation of the drilling and production of oil and gas wells, that body must necessarily determine at the outset, in each instance, whether the wells are oil or gas wells for the purpose of determining the character of regulation to be applied. Its determination that a certain well was either oil or gas contrary to the true facts and in derogation of the legislative definition would, of course, be entitled to no weight, but when these classifications for regulation are based upon substantial facts, the court should be slow to substitute its judgment for their judgment in the premises.

Upon this theory of the matter, and on the state of the record as it now stands, we might dispose of this case now as it was disposed of on the prior hearing and without more ado. However, having heard at great length all the evidence in the matter, and the action of the Commission now being challenged as arbitrary and without basis or foundation in law or fact, we think it appropriate to add the following:

Complainant's right to relief hinges entirely upon the question of whether these wells are oil wells or gas wells. Their contention that they are oil wells is apparently based entirely on the fact that in a separator connected to a choke certain water-white liquid is accumulated, which upon analysis shows to contain various hydrocarbon compounds characteristic of crude petroleum oil. The catching of this liquid is the only thing that could in any possible way be claimed to classify the wells as oil wells. They are not drilled in or produced as oil wells; there is nothing to indicate any fluid level in the formation, or any fluid column in the tubing when the wells are closed down; pressure as between the tubing and the casing gives no such indication; the wells do not flow by heads when reopened, nor is there any visible or perceptible liquid given forth at that time. When the wells are opened into the air what is apparently a gas is produced, and though a small amount of moisture may be accumulated on one's hand by placing it in that gas, the ground is in no way wet and no amount of liquid is accumulated, and the gas dissipates and goes off into the air leaving no trace. On the other hand, when this gas is run through a choke and turned into a separator provided with baffle plates, a water-white liquid, heretofore mentioned, is precipitated and saved.

It is our opinion, from the evidence, that complainant's wells do not produce any crude petroleum oil in the statutory sense of that term. They produce wet gas, which when acted on by the baffle plates in the separator causes a distillate which complainants claim is oil. It is only by the most strained and technical construction that wells of this character could be classed as oil wells. The statutes must be given a reasonable construction and construed with the view of effecting the legislative intent, if valid. We think it perfectly obvious that the statutory definition of an oil well was never intended to cover wells of this character, which normally produce gas and can only be made to produce oil by the use of manufacturing processes, however crude, at the head of the well.

Furthermore, it is our opinion that regardless of the question of the manner of production the water-white liquid caught and saved in the separator is not crude oil within the sense of the statute defining oil wells. The logs of complainant's various wells, and other wells in this apparently common reservoir, together

with cores and samples of sand from these wells, would indicate that there is no fluid level in the reservoir and no liquid crude petroleum existing therein as such. The sand is uniformly gray in color, contains no fluid, and is classified as typical gas sand, and not as oil sand. Liquid caught in the separator becomes such through mechanical devices or condensation after it leaves the head of the well, and not because it existed in such form in the reservoir. If such an operation at the well head can transform a gas well into an oil well, then there are very few fields which should not be classified as oil fields, because the history of the industry, as indicated by the record, shows that volatile liquid of the character caught by complainants can be wrung from practically all gas wells in greater or less amounts. We believe that there enters into the definition of crude oil in all applicable statutes the proposition that the substance referred to should lie in the bed or reservoir as oil and as oil be produced from it. It was certainly never intended to cover distillates such as those involved here when the statute speaks of the production of crude petroleum oil. It may be, and possibly is true, that this product of the separator has many of the characteristics of crude petroleum and under certain technical chemical definitions might be so classified. Water-white as it is, and so volatile as to be adaptable for immediate use in gasoline engines, it has certainly never been considered as crude oil by the oil and gas industry generally. We think it manifest that the Legislature in speaking of crude petroleum oil meant a liquid existing in the ground as oil and as such produced from it. It is our opinion that this condensate or distillate caught in complainant's separators is not crude petroleum oil within the contemplation of the statute.

What has been said disposes of complainant's alternative contention that the gas is "casing head gas." The statute provides that casing head gas shall mean any gas and/or vapor indigenous to an oil stratum and produced from such stratum with oil.

While we are of the opinion that complainant's gas is wet and has at some point contacted oil, it is most certainly not at this time produced from an oil stratum, nor is it produced with oil.

The permanent injunction prayed for will be denied, and an appropriate decree in accordance with this opinion may be prepared and presented for entry.