**KIRSCHNER et al. v. McCRACKEN et al.**

No. 26678.  March 23, 1937.

Rehearing Denied June 8, 1937.

Wm. H. Lewis and A. C. Hough, for plaintiffs in error.

C. D. Cund, C. W. King, A. L. Herr, and Wendell Barnes, for defendants in error.

GIBSON, J.  This appeal questions the constitutionality of article 7, chapter 59, Session Laws 1935, entitled as follows:

"An act to regulate the business of buying, selling and otherwise dealing in used pipe line, oil, gas and other mineral equipment; defining dealers, peddlers, truckmen and brokers engaged in said business; providing for the licensing of such dealers, peddlers, truckmen and brokers; providing for the making, keeping and filing of reports covering purchases and sales of such used equipment; and providing penalties for the violation of this act and declaring an emergency."

Power to enforce this act is lodged in the Oklahoma Tax Commission, and the plaintiffs in error, as parties engaged in the business named in the measure, commenced this action in the district court of Oklahoma county against the members of said commission to enjoin the enforcement thereof. The trial court entered its judgment denying the injunction, and this appeal is prosecuted therefrom.

The parties in error are hereinafter referred to as plaintiffs and defendants, respectively.

The act is designed as a measure to control the business of any and all parties dealing in, brokering, peddling, or trucking used pipe line equipment, oil and gas equipment, and mineral equipment, and includes approximately every known article used in the construction and maintenance of pipe lines, used in the process of discovery and production of oil and gas and all other minerals.

It is conceded by plaintiffs that the business of dealing in used or second-hand articles is a proper subject of license and control under the police powers of the state. But, it is urged, the act in the instant case goes beyond the recognized limit of regulation in the public interest and degenerates into an unlawful taking of property or of private rights without just compensation (section 24, art. 2, State Const.) ; would deny plaintiffs the equal protection of the laws and deprive them of their property without due process (section 7, art. 2, State

Const.; 14th Amend. Federal Const.); and that the act is without uniform application throughout the state (section 59, art. 5, State Const.).

It is said that the act is without uniform application and is discriminatory because it is not made to apply to all kinds of used or second-hand materials. This objection raises the question of proper legislative classification of businesses for purposes of regulation and control under the police powers, and brings up for consideration the constitutional guarantee of equal protection of the laws.

Here the classification of the parties to be licensed and controlled is based wholly upon the character of the property in which they deal. If there exists a reasonable ground for this classification, and the law operates equally on all persons within the class, it is valid. This is so well settled that further discussion would be of little benefit (12 C. J. 1128, 1129; but, as is often held, the classification must be reasonable and not merely arbitrary. If the act here is to be recognized as constitutional, the property upon which the classification of the business rests should, in its characteristics, bear a real distinction from that of other used articles, the dealers in which are not brought within the operation of the act. See 12 C. J., 1130.

The act may be interpreted as applying to all dealers, brokers, peddlers, and truckmen dealing in or handling any piece of material or tool that had previously been employed in the construction, operation, and maintenance of pipe lines, refineries, oil and gas properties, and mining properties. Although the effect may be to place a duty upon the parties to ascertain the history of all such used articles when they are about to undertake to deal therein, thereby resulting in more or less hardship, that alone is not sufficient to invalidate the statute as. unconstitutional.

The act here in question constitutes merely an expression of governmental policy exercised under the state's police powers. The question of its propriety is of no concern to the courts when that power is exercised within the limitations prescribed by the Constitution. If the people through the Legislature say that dealers in used articles, certain and defined, shall be regulated in the interest of the public welfare, the fact that all used articles are not included does not brand the act as an arbitrary classification if, as in this case, it operates upon all the affected parties alike.

It is true that the classification here is based upon the use to which the property was formerly employed rather than upon its physical identity. However, the fact that the Legislature may have placed upon all the parties affected the burden of ascertaining the prior use is of no judicial concern, and is not sufficient to warrant a holding of this court that the classification is unreasonable.

No doubt the Legislature, when enacting the measure here considered, looked upon the second-hand oil field and mining equipment as peculiarly subject to theft and sale. It is empowered to classify such property separately as a subject of police regulation. The Supreme Court of the United States has so held with reference to property employed in the telegraph and railroad businesses. Rosenthal v. New York, 226 U. S. 260. In that case the court held as follows:

"A state may, in the exercise of its police power, classify separately particular kinds of personal property which the Legislature considers more susceptible of theft than other property.

"It is not unreasonable or arbitrary to require dealers in junk to make diligent inquiry to ascertain that persons selling to them wire cable, iron, etc., belonging to railroads or telegraph companies have a legal right to do so.

"Dealers who provide an important and separate market for a particular class of stolen goods may be put in a class by themselves, and so as to dealers in junk."

We think that holding aptly applies to the property here involved.

We find no provisions in the act that would tend to discriminate as between any persons who may want to deal in the property described therein. That circumstance distinguishes the statute from the ordinance under consideration in Grantham v. City of Chickasha, 156 Okla. 56, 9 P. (2d) 747, wherein the regulatory provisions were held to be discriminatory in their application to the parties engaged in the same character of business. There bakers outside the city of Chickasha were required to pay an annual tax for the privilege of doing business in the city while local bakers were exempt. Here all alike are subject to all the provisions of the statute.

The statute places upon the licensee certain duties with reference to giving bond, paying annual fees, keeping records of purchases and filing such records with the sheriff, and holding articles a certain length of

time before disposal thereof. The commission is given authority to cancel licenses, to refuse to issue or to reinstate the same in cases where the party violates any provisions of the act. Any threatened action of the commission must be preceded by ten days' notice to the licensee, giving him an opportunity to show cause against such action. Upon giving said notice the commission may suspend the license pending the hearing, and the licensee may be prohibited from transacting further business until the matter is settled.

Any party feeling himself aggrieved by an act of the commission may appeal to the Supreme Court.

The provision requiring bond, $1,000 for dealers and brokers, and $500 for peddlers and truckmen, is not arbitrary or unreasonable. It is not apparent that the combined cost of the bond and license would destroy the business here under consideration or render the same unprofitable; and it is not shown that all parties engaged or to become engaged in such business would encounter insurmountable difficulties in making bond and qualifying under the act. The fact that plaintiffs alone, for reasons peculiar to themselves, may be unable to meet the requirements does not militate against the constitutionality of the statute. Gant v. Oklahoma City, 289 U. S. 98, 77 L. Ed. 1058.

Plaintiffs urge that the power given the commission to suspend the licensee's business pending hearing for cancellation clearly deprives the licensee of his property without due process of law in that his business may be closed arbitrarily by an administrative board without affording him the opportunity of a judicial hearing.

This contention is not supported by the general rule obtaining in most jurisdictions. The rule is expressed in 37 C. J., sec. 109, as follows:

"It is generally held or provided under the various license acts and ordinances, or expressly stipulated in the license itself, that a license may be revoked for due cause at any time by the licensing authorities: and, since a license is a mere privilege, and neither a contract nor a property or vested right, a statute or ordinance authorizing or providing for its revocation does not violate constitutional provisions, as depriving the licensee of property, immunity, or a privilege, Such revocation is generally within the discretionary powers of the revoking authorities; but it cannot be exercised arbitrarily without cause, unless authority to do so is expressly given by statute, and if, in the absence of such authority, the discretion of the licensing authorities in revoking a license is exercised with manifest injustice, the courts may interfere."

Under that rule, if a business is suspended without just cause, the aggrieved party may resort to the courts for injunctive relief; or he may appeal here from the action of the commission as provided in the statute.

The judgment of the trial court is affirmed.

BAYLESS, V. C. J., and RILEY, WELCH, CORN, and HURST, JJ., concur. OSBORN, C. J., and BUSBY and PHELPS, JJ., absent.